## UNITED STATES v. HILL et al.
### Civil Action No. 4755.

District Court, N. D. Ohio, W. D.

Nov. 15, 1944.

Don C. Miller, U. S. Atty., of Cleveland, Ohio, and Marcus L. Friedman, Asst. U. S. Atty., of Toledo, Ohio, for plaintiff.

John H. Matthews, of Columbus, Ohio, for defendant.

KLOEB, District Judge.

Plaintiff brought suit on a cognovit note, signed by the defendants George F. Hill and Madeline Hill. The material portions of the note are as follows:

"Promissory Note

"$718.63          Columbus, Ohio, 12–6 1935

"For value received, the undersigned promise to pay to the order of The City National Bank & Trust Co. of Columbus at its office at 9 E. Long St., Columbus, Ohio, the sum of Seven hundred eighteen and 63/100 Dollars in consecutive monthly installments of $19.97 Dollars each, commencing January 15, 1936, and the balance 36 months after date hereof." * * *

Thereafter there follows the usual acceleration and warrant of attorney clauses, with the added notation that the loan evidenced by the note was made under Title I of the National Housing Act of 1934, 12 U.S.C.A. § 1702 et seq. The note bears the signatures of George F. Hill and Madeline Hill and under their signatures the words "Prospect, Ohio." The back of the note bears the following notations and endorsements.

"Endorsements

"Columbus, Ohio, May 12, 1937.

"All right, title, and interest of the undersigned to the within note is hereby assigned, without recourse, to the Federal Housing Administrator acting on behalf of the United States of America.

"The City National Bank and Trust Company of Columbus,

"By /s/ G. E. Coffman, Vice-President

| Jan. 15, 1936 (Jan.) | 19.97 | 698.66 |
| Mar. 21, 1936 (Feb.) | 19.97 | 678.69 |
| Apr. 15, 1936 (Mar.) | 19.97 | 658.72 |
| May 15, 1936 (Apr. thru August) | 100.00 | 558.72 |

"#150519
"In Judgment
"Date    10–8–36

"Charles E. King
"Clerk of Courts."

The facts have been stipulated by the parties, and are as follows:

On December 6, 1935, one William H. Parker, an agent of the Super-Cold Midwest Co., of Chicago, Illinois, appeared at the store in Prospect, Ohio, which was owned and operated by Mary Hill, the wife of the defendant, George F. Hill. He endeavored to sell a refrigerated display case to Mr. Hill, having before that time been unsuccessful in interesting the owner, Mrs. Hill. Mr. Hill informed him that he did not own the business and was not authorized to consummate the transaction. Whereupon, Mr. Parker requested Mr. Hill to sign a promissory note in the amount of $718.63 for the purchase of such a case, stating that he would go to Mr. Hill's home and have the note signed also by Mrs. Hill, the owner of the business. Relying upon Mr. Parker's representation, Mr. Hill signed the note, and the former then took it to Mr. Hill's home and, instead of presenting the note to Mary Hill, the wife and. owner of the business, presented it to Madeline Hill, their sixteen year old daughter, stating that her father had requested her to sign the note.

Upon returning home in the evening, and learning what had transpired, Mr. Hill wired the Super-Cold Midwest Co., withdrawing any offer which he had made to purchase, and notified them to cancel the transaction. Neither Mr. Hill nor any one in his behalf made any payment on said transaction, and neither did he hear from the Super-Cold Midwest Co. until a few days thereafter, when Mr. Parker returned and told Mr. Hill that everything was cancelled. Neither Mr. Hill nor any one in his behalf ever received any refrigerated display case.

Mr. Hill did nothing further about the matter, until he was notified that, on Oc-

tober 8, 1936, judgment in the amount of $558.72 had been taken against him and Madeline Hill in the Common Pleas Court of Franklin County, Ohio, by the payee of the note. From January 15, 1936, through August of 1936, a total of $159.91 had been paid on the note, evidently by Mr. Parker or someone in his behalf. Neither Mr. Hill nor any one in his behalf ever made any payments on the note.

On October 30, 1936, the judgment above referred to was vacated on motion of the defendant, and on May 12, 1937, the note was transferred to the plaintiff under the provisions of the National Housing Act of 1934. Subsequent to this date, negotiations were had between the plaintiff and the defendant, George F. Hill, looking towards a settlement of the matter. Nothing was accomplished and, on April 4, 1942, suit was brought against the defendants and judgment rendered against them in the amount of $701.73, on April 8, 1942. On November 18, 1943, this judgment was vacated on motion of the defendants, who filed answers denying that any consideration was ever received by them or any loan made by them, and further denying that plaintiff is a bona fide holder of said note for value. Defendant Madeline Hill also alleged that, at the time said note was signed, she was a minor, sixteen years of age.

Because of the minority of the defendant Madeline Hill, the plaintiff has agreed and consented that the action against her should be dismissed.

■ It is, of course, undeniable that, upon the agreed facts, the defense of fraud and no consideration is good, and judgment must be for the defendant George F. Hill, unless these defenses cannot be set up against the payee of the note or the present plaintiff. General Code of Ohio, Section 8133, provides that absence or failure of consideration is a defense to any party not a holder in due course.

The plaintiff contends that these defenses may not be raised against it because "* * * the institution that purchased said note was the holder in due course * * *," and that the plaintiff, having taken through a holder in due course, is itself such a holder. The defendant contends, on the other hand, that the plaintiff cannot be a holder in due course, because of the fact that it secured the note after it was past due and, as a matter of fact, had already been in judgment.

General Code of Ohio, Section 8157, defines a holder in due course as follows:

"* * * One is a holder in due course who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face.

"2. That he became the holder of it before it was overdue, and without notice that it previously had been dishonored, if such was the fact.

"3. That he took it in good faith, and for value.

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

General Code of Ohio, Section 8163, provides:

"In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter."

■ It would appear that the present plaintiff cannot be a holder in due course in its own right for two reasons. The first, there is no question that it took the note after it was over-due. Second, the note itself recites: "All right, title, and interest of the undersigned to the within note is hereby assigned, without recourse, to the Federal Housing Administrator acting on behalf of the United States of America. The City National Bank and Trust Company of Columbus, By /as/ G. E. Coffman, Vice-President." It is the law of Ohio that a transfer by assignment is different from a contract of endorsement. 29 Ohio Juris., Sec. 185, page 958, and cases there cited.

In Carius v. Ohio Contract Purchase Co., 30 Ohio App. 57, 164 N.E. 234, 235, the Court said: "The word 'assign' has a definite and distinct meaning, and a transfer of a contract by assignment is quite different from a transfer of a contract for the payment of money only by indorsement; * * *." The first syllabus of that case is: "A writing on the back of a series of promissory notes, which purports to be an indorsement, but reads, 'for valuable consideration we assign the notes and the

mortgage securing the same,' is a mere assignment of the notes." The second syllabus is: "Where the maker of a series of promissory notes has a complete defense against the payee, he may use the same defense against an assignee of the notes." The Court further says that an assignee stands in the shoes of his assignor.

Plaintiff here, therefore, can have no more right to enforce the note in question than the payee of the note. The question thus resolves itself into consideration of the rights of the City National Bank and Trust Company of Columbus, the original payee.

There is considerable conflict of authority as to whether or not a payee of a negotiable instrument may, under any circumstances, be considered a holder thereof in due course. This exact point has not been settled by the Courts of Ohio and there do not appear to be any Federal cases in point.

General Code of Ohio, Section 8135, defines negotiation as follows:

"An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery. If payable to order it is negotiated by the endorsement of the holder completed by delivery."

In view of this definition, it is difficult to see how the original payee can be a holder in due course. A negotiable instrument is issued to a payee, not negotiated to him, and Section 8157 of the General Code of Ohio, supra, requires that there be negotiation before there can be a holder in due course. The Court feels that the better line of reasoning is contained in those cases which hold that the payee of a negotiable instrument cannot be a holder in due course. I feel, also, that there is some indication in the cases that the Courts of Ohio would follow this view. In Ohio Juris., Vol. 29, Sec. 180, page 955, the following statement is made:

"This much vexed question has not been definitely settled in Ohio, although in a case construing and applying G.C. § 8229, (Dick v. Hyer, 94 Ohio St. 351, 114 N.E. 251) the plaintiff, who was held, under this section, entitled to recover on the instrument as originally written, was apparently the payee, although this was not altogether clear, and the court did not directly consider the question."

See, also, Edgar v. Haines, 109 Ohio St. 159, 141 N.E. 837, 838, 38 A.L.R. 795, which holds that the word "negotiation", as used in another section of the Negotiable Instruments Law, is a "technical term, and is used in a technical sense as the transfer of a negotiable instrument in due course."

Again, in Carius v. Ohio Contract Purchase Co., supra, the Court appeared to hold, at least by implication, that a payee could not be a holder in due course, saying "there being a complete defense, as already pointed out, by the maker of this paper against the payee, the same defense can be used against the present holder of the paper."

It would appear, therefore, that the plaintiff cannot be considered a holder in due course on the theory that it derived its title through a holder in due course.

Another reason or theory for refusing to allow the defendant to raise the defenses of no consideration and fraud is that of estoppel: the application of "* * * the legal maxim that, where one of two innocent persons must sustain a loss from the fraud of a third, such loss must fall upon the one, if either, whose act has enabled such fraud to be committed. * * *" Edgar v. Haines, supra. Under the facts as the Court has them here, however, it cannot be said that this doctrine applies.

The complaint is, therefore, dismissed as to both defendants. The defendant may have ten (10) days in which to file findings of fact and conclusions of law in accordance herewith, and the plaintiff may have five (5) days thereafter in which to file corrections or suggested additions thereto.